UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEVEN A. McLEOD,

      Petitioner,

v.                             Case No. 8:06-cv-794-T-23EAJ

SECRETARY, Department of Corrections,

      Respondent.

_____/

## O R D E R

      McLeod petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254

(Doc. 1) and challenges his convictions for two counts of sexual battery involving the

threat of force and one count of false imprisonment, for which convictions McLeod

serves life imprisonment.  Numerous exhibits ("Respondent's Exhibit ___") support the

response (Doc. 25).  The respondent admits the petition's timeliness (Response at 6

Doc. 25).

## FACTS[1]

      In September, 2000, the victim started renting a room from McLeod, whom she

had known for more than eight years.  The victim and McLeod had sexual relations four

or five times over the years, the last occurring about two years before the assault.  Four

days after moving into McLeod's house, the victim was awakened after midnight by

McLeod touching her and threatening her saying, "Do as I say, I've got a gun – I got a

---

[1] This summary of the facts derives from McLeod's brief on direct appeal (Respondent's Exhibit 2).

knife.  I will hurt you."  McLeod tied the victim's right hand and foot together and her left

hand and foot together.  He forced her to perform oral sex on him and he penetrated her

rectum with a wooden object.

## **STANDARD OF REVIEW**

Because this action commenced after April 24, 1996, Section 2254(d), as

amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210

(11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law,
> > as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in
> > the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted

this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.  Under
> § 2254(d)(1), the writ may issue only if one of the following two conditions is
> satisfied--the state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States," or (2) "involved an unreasonable
> application of . . . clearly established Federal law, as determined by the

Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The state appellate court affirmed (Respondent's Exhibit 5) McLeod's convictions and sentences on direct appeal in a per curiam decision without a written opinion, and likewise affirmed (Respondent's Exhibit 11) the denial of his subsequent Rule 3.850 motion for post-conviction relief.  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

McLeod bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a

- 3 -

mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert.

denied, 534 U.S. 1046 (2001).  Consequently, this court must defer to the finding of fact

in the state court's rejection of McLeod's post-conviction claims (Order Denying Motion

for Post-Conviction Relief, Respondent's Exhibit 10).  McLeod presents ten claims of

ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

McLeod claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective

assistance of counsel are few and far between."  Waters v. Thomas, 46 F.3d 1506, 1511

(11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of

counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled
> and well documented.  In Strickland v. Washington, 466 U.S. 668, 104
> S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part
> test for analyzing ineffective assistance of counsel claims.  According to
> Strickland, first, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious that
> counsel was not functioning as the "counsel" guaranteed the defendant by
> the Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice.

Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305

("When applying <u>Strickland</u>, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland v. Washington</u>, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland v. Washington</u>, 466 U.S. at 690. <u>Strickland</u> requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland v. Washington</u>, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," McLeod must demonstrate that error by counsel prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. at 691-92. To meet this burden, McLeod must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland v. Washington</u>, 466 U.S. at 694.

<u>Strickland</u> cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Strickland v. Washington</u>, 466 U.S. at 690-91. McLeod cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done.
> Nor is the test even what most good lawyers would have done.  We ask
> only whether some reasonable lawyer at the trial could have acted, in the
> circumstances, as defense counsel acted at trial. . . .  We are not interested
> in grading lawyers' performances; we are interested in whether the
> adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United

States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in

every case, could have done something more or something different.  So, omissions are

inevitable. . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but

only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S.

776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no

duty to raise frivolous claims).

McLeod must prove that the state court's decision was "(1) . . . contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States or (2) . . . based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. § 2254(d).

The state court conducted an evidentiary hearing and denied each claim of

ineffective assistance of counsel as follows:

> In grounds 1 through 8, Defendant alleges ineffective assistance of
> counsel.  When ineffective assistance is alleged, the burden is on the
> person seeking collateral relief to specifically allege the grounds for relief
> and to establish whether the grounds resulted in prejudice.  Effective
> assistance of counsel does not mean that a defendant must be afforded
> errorless counsel or that future developments in law must be anticipated.
> Meeks v. State, 382 So. 2d 673 (Fla. 1980).  In Strickland v. Washington,
> 466 U.S. 668, 686-87,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S.
> Supreme Court set out a two prong test for determining ineffective
> assistance of counsel.  "First, the defendant must show that counsel's

performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable . . . The proper standard for attorney performance is of reasonably effective assistance."

The Florida Supreme Court in <u>Downs v. State</u>, 453 So. 2d 1102, 1108 (Fla. 1984), citing <u>Strickland</u>, 466 U.S. at 694, stated that the defendant must affirmatively prove prejudice.  The test for prejudice is:  "That there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Respondent's Exhibit 10 at 3.  Because the state court correctly recognized that <u>Strickland</u> governs each clam of ineffective assistance of counsel, McLeod cannot meet the "contrary to" test in Section 2254(d)(1).  McLeod instead must show that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts.

<u>Ground One</u>

McLeod alleges that the prosecutor exercised a peremptory challenge against juror Hansberry in violation of <u>Batson v. Kentucky</u>, 476 U.S. 70 (1986).  McLeod raised this substantive claim on direct appeal, which was summarily rejected.  Because a question exists whether trial counsel adequately preserved the issue, McLeod also alleges that trial counsel rendered ineffective assistance by failing to properly object to the prosecutor using a peremptory challenge to remove jury Hansberry.  McLeod raised the claim of ineffective assistance of counsel in his motion for post-conviction relief, which the state court rejected.

> Ground 1 - Ineffective assistance of counsel - failure to raise <u>Batson</u> claim

In ground 1, Defendant claims ineffective assistance of counsel due to counsel's failure to raise a <u>Batson</u> claim to the prosecutor's peremptory challenge to the only African-American juror called upon to serve on Defendant's jury.

A review of the record does reflect that after the State moved to strike Mr. Hansberry, Defendant's trial counsel, Ms. Richardson, asked for a race-neutral reason, and the Court asked the State to give a race-neutral reason for exercising a peremptory strike on Mr. Hansberry.  The State responded, "Other than the fact Mr. Hansberry was not very forthcoming, but our notes show follower not a leader.  Those were just more of a personal preference.  Obviously nothing to do with race.  And the member is not a member of the selected class."  Ms. Richardson argued that Mr. Hansberry answered the questions in the same manner as other jurors.  No argument was made that there had been a discriminatory pattern of strikes.  Because the Court allowed the strike, the Court made a finding that the strike was genuine and not a pretext.  When Defendant later raised the issue on direct appeal, the Office of the Attorney General argued that the strike was proper.  The Second District Court of Appeal affirmed the conviction without an opinion.

Generally, "a failure to renew an objection made during jury selection prior to accepting the jury, and the jury being sworn will be considered a waiver pursuant to <u>Joiner v. State</u>, 618 So. 2d 174 (Fla. 1993);" however, "the court in <u>Gootee v. Clevinger</u>, 778 So. 2d 1005, 1009 (Fla. 5th DCA 2001), found that when an objection made during jury selection was made clearly and in close proximity to the jury being sworn, the objection was preserved for appeal."  Likewise, the trial transcript in the instant case "reveals that defense counsel's objection to the State's strike was near the end of the jury selection, and the jury was accepted by both sides after a total of three additional strikes."

> A party objecting to the other side's use of a peremptory challenge on racial grounds must:  a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike.  If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2).  If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be

> sustained (step 3).  The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.

Melbourne v. State, 679 So. 2d 759, 764 (Fla. 1996).

Defendant takes issue with the Court's statement, "Well, I believe the case law indicates I'm not supposed to get into the reasonableness of the choice . . . ."  In his Reply, Defendant, citing Shuler v. State, 816 So. 2d 257, 259, n.2 (Fla. 2d DCA 2002), states, "The reasonableness is a factor to be considered in assessing the genuineness of the race-neutral reason."

In Shuler v. State, footnote 2 provides,

> FN2.  We mention that while a trial court's inquiry should not focus on the reasonableness of the asserted nonracial motive, this does not mean that a trial court must ignore the reasonableness of the asserted explanation.  As stated in Melbourne, reasonableness is another factor that a trial court may consider in assessing genuineness.  Melbourne v. State, 679 So.2d 759, 764 n. 9 (Fla.1996).  Trial courts should consider all the relevant Melbourne factors, including the reasonableness of the explanation, in determining whether the stated reason is genuine.

After reviewing the voir dire transcript, the Court finds that the Court considered the State's response to be genuine, particularly when the State said, "Other than the fact Mr. Hansberry was not very forthcoming, but our notes show follower not a leader.  **Those were just more of a personal preference** . . . ."  As such, Defendant has failed to prove that his counsel performed in a deficient manner during voir dire.  Furthermore, Defendant has failed to show that he was prejudiced by his counsel's performance by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Therefore, ground 1 is denied.

Respondent's Exhibit 10 at 4-6 (emphasis original).

The state court found that McLeod's ineffective assistance of counsel claim lacks

merit because counsel timely objected and preserved the issue for direct appeal.  The

state court also determined that the prosecutor proffered a valid, race-neutral reason for

striking juror Hansberry, i.e., that the juror was both "not very forthcoming" and "a follower, not a leader."  Both reasons are race-neutral that the trial court accepted as genuine.  McLeod's challenge focuses almost exclusively on the prosecutor's "personal preference" comment without adequately acknowledging the two race-neutral reasons stated by the prosecutor and accepted by the trial court.  "I will allow the strike [and I f]ind there is no pretemporal [sic] strike in this instance."  Respondent's Exhibit 1 at 107.  The trial court's credibility determination receives deference.

> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding "largely will turn on evaluation of credibility."  476 U.S., at 98, n. 21, 106 S.Ct., at 1724, n. 21.  In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.  There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge.  As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

Hernandez v. New York, 500 U.S. 352, 365 (1991).  McLeod fails to meet his burden because the state court's application of Batson was consistent with controlling Supreme Court authority.[2]  See Purkett v. Elem, 514 U.S. 765, 769 (1995) ("The prosecutor's proffered explanation in this case–that he struck juror number 22 because he had long, unkempt hair, a mustache, and a beard--is race neutral and satisfies the prosecution's step two burden of articulating a nondiscriminatory reason for the strike.").

---

[2] "Clearly established federal law is *not* the case law of the lower federal courts, including this Court.  Instead, in the habeas context, clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision.' " Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (emphasis original), cert. denied, 537 U.S. 870 (2002).  Consequently, McLeod misplaces reliance on decisions issued after his 2001 trial.

<u>Grounds Two and Seven</u>

Grounds two and seven are intertwined and best understood together.  In ground two McLeod alleges that trial counsel was ineffective for failing to adequately confer with McLeod and prepare for trial.  In ground seven McLeod alleges that trial counsel was ineffective for failing to both conduct a proper investigation and call witnesses. McLeod raised these claims in his motion for post-conviction relief as grounds three and two, respectively, which the state court rejected.

> Ground 3 - Ineffective assistance of counsel - failure to adequately prepare and communicate with Defendant

In ground 3, Defendant claims ineffective assistance of counsel due to counsel's failure to adequately prepare for trial and failure to properly communicate with Defendant.  Defendant alleges that trial counsel gave an incorrect location of his house where the offense is alleged to have occurred in opening statements and gave an incorrect date for Hurricane Gordon.  Defendant also asserts that trial counsel only communicated with him via three-way telephone conversations, and he refused to speak of case details because he felt the county jail phones might be monitored. Defendant maintains that he was prejudiced by defense counsel's failure to adequately prepare and communicate with him.

The State responds that "a review of the trial transcript reveals that the part of town that the crime occurred" and the "alleged error regarding the location of the storm" were both insignificant to the trial.  The Court finds that although defense counsel made these errors, Defendant failed to show how he was prejudiced by them, or how the outcome of the trial would have been different.

Defendant also asserts that trial counsel only communicated with him via three-way telephone conversations, and he refused to speak of case details because he felt the county jail phones might be monitored. Defendant maintains that he was prejudiced by defense counsel's failure to adequately prepare and communicate with him.  The State notes that "meetings between attorney and client are within the discretion of counsel," and "other than the alleged errors, which were insignificant, the Defendant does not give any other examples of how any alleged failure to communicate with the Defendant affected the case."

> Effective assistance of counsel does not mean that a defendant must be afforded errorless counsel or that future developments in law must be anticipated.  Meeks v. State, 382 So. 2d 673 (Fla. 1980).  The Court finds that Defendant has failed to show that his counsel's performance was so deficient that it prejudiced the defense or deprived Defendant of a fair trial; therefore, ground 3 is denied.

Respondent's Exhibit 10 at 9-10.

McLeod asserts three examples to show how counsel's unpreparedness prejudiced the defense.  The state court ruled that the first two examples—counsel's factual misstatement about both the location of the incident and the date of Hurricane Gordon—were not prejudicial even though inaccurate.  The state court ruled that McLeod's third example—counsel's refusal to discuss the details of the case with McLeod while using a county jail telephone for fear that the telephone was monitored—also fails to show prejudice.  Underpinning his claim that counsel was unprepared, McLeod complains that trial counsel pursued a defense of consent, a defense McLeod argues was unprovable, whereas McLeod wanted to claim that the victim fabricated the incident to retaliate against McLeod for threatening to "kick her out" unless she paid the agreed rent.  McLeod offers no evidence to prove the fabrication defense whereas the victim testified to four or five prior consensual sexual encounters with McLeod (Volume II of Trial Transcript at 185, Respondent's Exhibit 1), including oral sex (Volume II of Trial Transcript at 163, Respondent's Exhibit 1).  Counsel's pursuing the defense of consent was reasonable and, because counsel was able to present the consent defense through the victim's testimony, McLeod was able to preserve his right not to testify.  The state court's decision was not an unreasonable application of controlling Supreme Court precedence.

- 12 -

The state court rejected McLeod's claim that trial counsel was ineffective for

failing to both conduct a proper investigation and call certain witnesses.

> Ground 2 - Ineffective assistance of counsel - failure [to] call
> and interview witnesses
>
> In ground 2, Defendant alleges ineffective assistance of counsel for trial
> counsel's failure to investigate and call witnesses helpful to the defense.[2]
>
> > [2] Defendant asserted that counsel should have alleged the
> > following witnesses:  (1) Willie Ervin, his AA sponsor; (2)
> > James Amos and (3) Reggie, his business clients; (4) an
> > expert computer witness, and (5) a physician whose expertise
> > is multiple sclerosis.
>
> As support for his allegations, Defendant cites <u>Odom v. State</u>, 770 So. 2d
> 195, 197 (Fla. 2d DCA 2000).  In <u>Odom</u>, the court held that in order to file a
> facially sufficient motion for a claim of ineffective assistance of counsel
> based on the failure to call witnesses, the motion must include "(1) the
> identity of the prospective witnesses; (2) the substance of the witnesses'
> testimony; and (3) an explanation as to how the omission of this evidence
> prejudiced the outcome of the trial."  <u>Id.</u> at 826.  Defendant has since filed a
> "Motion to Amend and Supplement (Rule 3.850) Motion" in which he cited
> to <u>Nelson v. State</u>, 875 So. 2d 579 (Fla. 2004), in which the Florida
> Supreme Court disapproved the Odom case for failure to include the fourth
> element:  that the witnesses were available to testify, not that they were
> willing to testify.  In his Motion to Amend, Defendant did assert that his
> witnesses would have been available to testify.  Accordingly, Defendant
> has met the standards set forth in <u>Nelson</u> for filing a facially sufficient
> motion based on this ground of ineffective assistance of counsel and has
> met the first requirement of <u>Strickland</u>.
>
> In the instant case, Defendant asserts that had counsel called, interviewed,
> and presented the witnesses, they would have impeached or contradicted
> the State's witnesses and that had the jury heard their testimony, the
> outcome of the trial would have been different.
>
> Defendant claims that his counsel should have called Willie Ervin to testify
> that he was working at McDonald's and never called Defendant from work.
> Defendant states that his testimony would have impeached the victim's
> deposition testimony. "The State responds that a review of the trial
> transcript reveals that the proposed testimony would not be relevant and
> would not impeach the victim."  The victim's deposition was not introduced

at trial.  Furthermore, she testified at trial, and defense counsel was able to cross-examine her.

The Court finds that Defendant has failed to prove that trial counsel's performance was deficient for failure to call Willie Ervin as a defense witness.

Defendant also claims that James Amos and Reggie, his clients, should have been called to impeach the victim's deposition testimony.  The State maintains that the testimony of neither person would have impeached the victim's testimony in deposition or at trial.

The Court finds that Defendant has failed to prove that trial counsel's performance was deficient for failure to call James Amos and Reggie as a defense witnesses.

Defendant contends that a medical expert would have testified that severe constipation is a serious side-effect of multiple sclerosis (MS) and of Ditropan.  Defendant claims such testimony would have been relevant to prove that the victim's anal tear was a result of constipation rather than penetration by a wood object.  The State notes that "the Defendant does not claim that an expert would have been able to render an opinion within a reasonable degree of medical probability that the victim was constipated at the time of the offense, or that the anal tear was caused by a bowel movement."  Additionally, Defendant's counsel did ask the victim if she had bladder control issues and questioned her use of Ditropan.  The victim testified that she was not taking Ditropan at the time of the offense.  The State notes that "any expert testimony that constipation is a common symptom of MS, or that Ditropan can cause constipation, would have been irrelevant or of little probative value in this case."

The State contends that "the trial testimony refutes the Defendant's claim. The victim testified about an attack of diarrhea that occurred as a direct result of anal penetration by a wood object.  It is inconsistent with the Defendant's theory that a bowel movement caused an anal tear when the bowel movement was diarrhea.  The Defendant does not claim or provide any support for a claim that diarrhea could cause an anal tear, much less the severe anal tear described by Nurse Shirley Engleman, who testified that the anal laceration was one-half to three-quarters of an inch long."

The Court finds that Defendant has failed to establish that it was deficient performance for trial counsel not to present the testimony of a medical expert and has failed to demonstrate how he was prejudiced by not having a medical expert testify.

- 14 -

Finally, Defendant alleged that trial counsel should have called a computer expert to review Defendant's computer and to impeach the victim's trial testimony that she did not use the Defendant's computer or even know how to use his computer.  The State responds, "Whether the victim ever used the Defendant's computer is not relevant to the crimes for which the Defendant was convicted . . . .  Because the issue of whether the victim ever used the Defendant's computer would not be material to the offense, any attempt to provide extrinsic evidence would be improper impeachment on a collateral matter.  Caruso v. State, 645 So. 2d 389, 394-395 (Fla. 1994)."

The Court finds that Defendant has failed to establish that it was deficient performance for trial counsel not to present the testimony of a computer expert, and has failed to demonstrate how he was prejudiced by not having a computer expert testify.

Since Defendant has failed to demonstrate that his counsel's performance was deficient for failure to call the enumerated witnesses, ground 2 is denied.

Respondent's Exhibit 10 at 6-9.

The state court's rejecting McLeod's claim regarding counsel's failure to call witnesses Ervin, Amos, and Reggie was not unreasonable.  McLeod alleges that these witnesses would have impeached the victim's deposition testimony, but the victim's deposition was never admitted at trial.  Consequently, because impeachment was not possible as McLeod alleges, trial counsel's performance was not deficient.  Counsel's failure to call a medical expert was also not deficient performance because McLeod's contention that constipation could have caused the victim's anal tear is inconsistent with the uncontested fact that the victim suffered from diarrhea.

Finally, counsel's failure to call a computer expert was not deficient performance.  McLeod contends that a computer expert could contradict the victim's testimony that she had never used McLeod's computer.  According to state law cited by the state court, whether the victim had used McLeod's computer is a collateral matter not subject to

impeachment with extrinsic evidence.  Consequently, counsel's performance was not

deficient.  McLeod fails to show that the state court's application of the <u>Strickland</u> test

was unreasonable.

<u>Ground Three</u>

McLeod alleges that trial counsel was ineffective for failing to object to the

prosecutor's closing argument.  McLeod raised this claim in his motion for

post-conviction relief as ground four, which the state court rejected.

> Ground 4 - Ineffective assistance of counsel - failure to object
> to State's improper closing argument
>
> In ground 4, Defendant claims ineffective assistance of counsel due to trial
> counsel's failure to object to the State's improper closing argument when
> the State argued matters not in evidence to bolster the credibility of the
> alleged victim, showed the jury the knots and loops in the rope, which had
> not been established during trial, and stated that the alleged victim told her
> friend, who did not testify at trial, what had happened, and then related the
> exact same story to the police.
>
> On direct examination, the victim testified that Defendant used the rope to
> tie her up, and the rope was then admitted into evidence.  On
> cross-examination, the victim testified that if it was not the exact rope used
> to tie her up, it was very similar to the rope that was used.  During closing
> arguments, both parties are allowed to refer to or show pieces of evidence
> to the jury, so there would be no reason for defense counsel to object to
> the State showing the rope to the jury.
>
> Defendant also claims that the State improperly "bolstered" the victim's
> credibility during closing arguments.  The State responds, "The statements
> of the prosecutor were simply inferences to be drawn from the evidence,
> which is the purpose of closing argument, and were not expressions of
> personal opinion to bolster the victim's credibility."  Upon review of the
> State's closing statement, the Court does not find any improper bolstering
> of the victim's credibility.
>
> Defendant asserts that his counsel should have requested the Court to
> re-open the evidence so Defendant could introduce the photograph of the
> rope in the computer desk drawer.  The State refutes this claim saying that
> the State introduced the photograph of the rope in the drawer as State's

Exhibit 15, and that Crime Scene Technician Rojas identified the
photograph as the one taken of the desk drawer.

Since the defense position was that no rope was used in the offense, trial
counsel argued that for the rope [to] appear "lily white," made no sense
given the facts of the case.  During closing arguments, defense counsel
told the jury to compare the picture of the rope in the desk drawer and the
actual rope with the knots in it.  Defense counsel's closing statement was
consistent to Defendant's theory of the case and was, therefore, not
deficient performance.

Additionally, Defendant claims that his counsel should have objected to the
State arguing during closing that the victim told her friend that she had
been raped, and then she related the same story to the police; however,
there was no basis for defense counsel to object because the State had
presented all of the evidence being discussed during the trial.

After reviewing the transcripts, the Motion, the State's Response, and
Defendant's reply, the Court finds that Defendant has failed to show that
defense counsel's performance was deficient for failing to object during
closing argument, and furthermore, he has failed to show how the outcome
of the case would have been any different but for the alleged errors.
Ground 4 is denied.

Respondent's Exhibit 10 at 10-12.

McLeod presents two complaints about the prosecutor's closing comments.

McLeod complains that the prosecutor showed the jury the rope allegedly used to bind

the victim.  McLeod also complains that the prosecutor argued to the jury that the victim

told a friend about the rape.  McLeod contends that both comments were an improper

bolstering of the victim's credibility.

In Florida, "wide latitude is permitted in arguing to a jury." Breedlove v. State, 413

So.2d 1, 8 (Fla. 1982).  "Moreover, the appropriate standard of review in a petition for the

writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of

supervisory power.' " Darden v. Wainwright, 477 U.S. 168, 181 (1986), quoting Donnelly

v. DeChristoforo, 416 U.S. 637, 642 (1974).

McLeod must show that the prosecutor's comments were both improper and prejudicial.  Improper prosecutorial remarks will compel habeas corpus relief only if the remarks are so egregious that the proceedings are rendered fundamentally unfair.  See Cargill v. Turpin, 120 F3d 1366 (11th Cir. 1997).  "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."  Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), cert. denied, 480 U.S. 911 (1987).  A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole.  Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. 1980).[3]  "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "  Darden v. Wainwright, 477 U.S. at 181, quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).

The victim testified that the rope admitted into evidence was the same rope or just like the rope McLeod used to bind her hands and feet.  A police officer testified that the rope admitted into evidence was the same rope removed from McLeod's computer desk. The rope remained in the evidence package throughout the trial until the prosecutor removed it during closing comments, at which time knots and loops in the rope were first revealed to the jury.  The prosecutor argued the significance of the location of the knots and loops.  McLeod contends that the prosecutor's comment about the knots and loops

---

[3] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

was improper because the existence of the knots and loops was not revealed during the state's case-in-chief.  Because he simply showed the jury that the physical evidence supported the victim's testimony, the prosecutor's comment was not objectionable.

The victim testified that the morning after the assault she confided in a friend, who helped the victim call the police.  Because the testimony presented to the jury supported the prosecutor's comment that the victim told a friend about the rape, the prosecutor's comment was not objectionable.

The state court properly ruled that trial counsel's failure to object was not deficient performance because neither comment was improper.  Consequently, the state court's application of <u>Strickland</u> was not unreasonable.

<u>Ground Four</u>

McLeod alleges that trial counsel was ineffective for failing to both impeach the victim's credibility and discover the victim's perjured deposition testimony.  McLeod raised this claim in his motion for post-conviction relief as ground five, which the state court rejected.

> Ground 5 - Ineffective assistance of counsel - failure to impeach the victim's credibility and to discover perjured testimony
>
> In ground 5, Defendant claims ineffective assistance of counsel due to counsel's failure to impeach the alleged victim's credibility and to discover perjured testimony.  Defendant asserts that the alleged victim's statements . . . at deposition . . . contained numerous inconsistencies that his counsel failed to discover or impeach[,] . . . includ[ing] whether . . . the victim was actually employed as a custodian at Sears at the time of the offense . . . .[4]

---

[4]  In the Rule 3.850 proceeding, McLeod asserted additional examples of inconsistent statements, but McLeod asserts only the employment issue in his federal petition.

> The State notes that in support of Defendant's claim that the victim committed perjury during her deposition, Defendant only attached a single page without a cover sheet noting the type and date of the procedure. Actually, it is not even clear that the victim is the person answering the questions; however, the victim may have worked at Sears at the time of the deposition was taken and may have been self-employed as a reflexologist at the time of the trial. Regardless, where the victim worked was not a material matter in this case, nor is it likely that it would have changed the outcome of this case.
>
> . . . .
>
> This Court finds that Defendant has failed to show that trial counsel's performance was deficient in attempting to impeach the victim, or prove that the victim committed perjury, therefore, ground 5 is denied.

Respondent's Exhibit 10 at 12-14.

To meet his burden under Strickland, McLeod must show both deficient performance and resulting prejudice. McLeod fails to meet the deficient performance prong of the Strickland test. The victim testified during her deposition that on the date of the offense she was employed by Sears. McLeod alleges that the victim's employment with Sears terminated before the date of the offense. McLeod contends that trial counsel should have impeached the victim based on this falsehood. The post-conviction court found that McLeod failed to provide adequate evidence proving that the victim's deposition testimony was false. As a consequence of McLeod's inadequate proof, the state court ruled that defense counsel's performance was not deficient. McLeod provides now no more proof than he provided the state court earlier.

McLeod also fails to meet the prejudice prong of the Strickland test. McLeod correctly argues that the victim's credibility was the linchpin of the case. Assuming that McLeod's allegation is correct—that the victim's deposition testimony was false because the victim was no longer employed with Sears on the date of the rape—the falsehood

questions only the victim's general credibility and not a material fact about whether McLeod assaulted the victim.  Based on the corroborating physical evidence, McLeod cannot show that counsel's failure impeach the victim changed the outcome of the trial. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.[5]

Ground Five

McLeod alleges that trial counsel was ineffective for failing to impeach Detective Wolfe and discover that police planted evidence in McLeod's home.  McLeod raised this claim in his motion for post-conviction relief as ground seven, which the state court rejected.

> Ground 7 - Ineffective assistance of counsel - (a) failure to impeach Det. Wolfe's testimony

The Court has previously denied ground 7(b).[6]  In ground 7(a), Defendant

---

[5] McLeod argues that the post-conviction court incorrectly applied the prejudice prong of the Strickland test.  In finding that McLeod failed to show prejudice, the court ruled that "nor is it likely that it would have changed the outcome of this case."  Respondent's Exhibit 10 at 13.  McLeod grasps Strickland's caution that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case."  Strickland v. Washington, 466 U.S. at 693.  Whether the post-conviction court incorrectly applied the prejudice prong, or inartfully described the prong in summary form by using the word "likely," is not clear, especially since the court correctly stated the prejudice prong (Respondent's Exhibit 10 at 3) when it recognized that Strickland governs McLeod's claim of ineffective assistance of counsel.  Nevertheless, McLeod fails to show a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

[6] The state court summarily denied ground 7(b) in McLeod's motion for post-conviction relief, stating:

> In ground 7(b), Defendant alleges newly discovered evidence regarding Det. Wolfe moving the rope from the windowsill in the kitchen to the desk drawer in the office.

(continued...)

claims ineffective assistance of counsel due to counsel's failure to impeach Det. Wolfe's testimony due to the numerous inconsistencies between Det. Wolfe's police report, deposition, and trial testimony.

Defendant takes issue with a portion of Det. Wolfe's police report, in which he describes the service and execution of the search warrant; however, Det. Wolfe never testified about the issue at trial.  Therefore, defense counsel's representation would not be deficient for failing to attempt to impeach Det. Wolfe on that issue.

Defendant also reads Det. Wolfe's deposition testimony to mean that Det. Wolfe did not find any knives in the residents [sic]; however, the State responds that during the deposition, Det. Wolfe was asked whether a knife was located that the victim could identify.  Det. Wolfe stated, "not identified, not taken into evidence."  When asked if he found a knife at all, Det. Wolfe stated, "No," but then he "explained that the back yard was packed full of stuff."  The State responds that it is far from clear that the detective meant he never saw a single knife in the house, regardless of whether it may have been used in the crime or identified by the victim."

The State also notes that during his trial testimony, Det. Wolfe testified about his observations during the search for particular items, including a computer, a knife, a wooden object, and any other pertinent items. He testified that he found a rope in the computer desk drawer and that he found knives.  He did not take the knives into custody because there were too many of them, and he did not recall the victim describing the knife.  He also stated that he found a large wooden object, but he did not know if it was used in the crime, so he did not take it into evidence.  He observed stains, which looked like fecal matter on the couch and love seat, he did not take them into evidence.  He found evidence that the floors had been cleaned, including a five gallon commercial mop and pail that had been recently used.  He found a soiled paper towel.

---

[6](...continued)

In order to merit a new trial on the basis of newly discovered evidence, Defendant must demonstrate (1) that the asserted evidence must have been unknown to the court or the parties and counsel at the time of trial, and the Defendant or counsel could not have discovered the evidence with due diligence, and (2) the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial.  Jones v. State, 591 So. 2d 911, 915 (Fla. 1991).  See also Scott v. Duggar, 604 So. 2d 465 (Fla. 1992). The fact that Det. Wolfe may have moved the rope from the kitchen to the computer desk does not meet the due diligence standard.  That is information that could have been discovered either by Defendant or his counsel prior to trial.  Therefore, ground 7(b) is denied.

October 4, 2004, order denying in part motion for post-conviction relief at 8, Respondent's Exhibit 10.

The State points out that on cross-examination, Det. Wolfe testified that he did not personally find the rope in the desk drawer; that he instructed Officer Rojas to take pictures of the rope in the desk drawer; that he did not take a knife into evidence; that he did notice stains on the couch cushions, but did not take the cushions into evidence; and he could not remember if he opened the computer drawer and found the rope, or if another officer opened it.  It does not appear that trial counsel's cross-examination was deficient, nor was she ineffective for failing to impeach Det. Wolfe.

Additionally, the State notes that Defendant in his Motion makes references to statements that were made after the trial and during the Motion for New Trial hearing.  All references to statements made after the trial are irrelevant to the issue of impeaching Det. Wolfe during trial.

After reviewing the testimony, the court file, the Motion, the State's Response, and Defendant's response, the Court finds that Defendant has not met the first prong of the <u>Strickland</u> test by failing to demonstrate how his trial counsel's representation was deficient; therefore, ground 7 is denied.

Respondent's Exhibit 10 at 15-17.

The post-conviction court's rejecting McLeod's claim was not an unreasonable application of <u>Strickland</u>'s two-prong deficient performance and prejudice test.  Further legal analysis is unnecessary.  However, further elaboration of the circumstances is beneficial for a better understanding of the meritlessness of McLeod's claim.

McLeod was present during the search of his home.  In fact, he allowed officers into his home while waiting for detectives to arrive with the search warrant.  An officer accompanied McLeod through the kitchen while McLeod removed his dog from inside the house.  McLeod contends that, while walking through the kitchen, he saw the rope on the windowsill.  He surmises that one of the police officers must have "planted" the rope inside the computer desk.  McLeod faults counsel for not developing the argument that the police officers "planted" evidence (the rope) in the computer desk.  The possible "planted evidence" argument was known to McLeod, and thus his counsel, prior to trial,

- 23 -

but McLeod forfeited presenting his testimony contesting the location of the rope when he waived his right to testify.  After the close of the prosecution's case, defense counsel announced that McLeod intended to exercise his right to remain silent.  The trial court ensured that McLeod understood the significance of waiving his right to testify, which colloquy concluded with the following:

> THE COURT:  If you decide not to testify, I ask that you advise me whether or not you're going to testify.  Have you made a decision yet, sir?
>
> THE WITNESS:  Yes, Your Honor, I've discussed with my attorney and as a criminal paralegal I'm aware of the case law, I've done research, and I've decided to remain silent pursuant to both the case law and from the advice of my counsel as it's in my best interest.
>
> THE COURT:  And you agree with that advice?
>
> THE WITNESS:  Yes, sir.
>
> THE COURT:  And you've had an opportunity to discuss your options with her?
>
> THE WITNESS:  Yes, sir, it's a free and voluntary decision not to testify.
>
> THE COURT:  And you indicated that you've done research on your own?
>
> THE WITNESS:  Yes, sir.  I'm a paralegal.  That's what I do for a living.
>
> THE COURT:  So you have no question about your decision.
>
> THE WITNESS:  No, Your Honor.
>
> THE COURT:  And you're not going to testify here today?
>
> THE WITNESS:  No, sir.
>
> THE COURT:  I find that he has entered that decision freely and voluntarily and understands the consequences of his decision.

Volume II of Trial Transcript at 255-56, Respondent's Exhibit 1.  Even accepting McLeod's version of the facts, the police were not guilty of "planting" evidence inside

McLeod's house.  At most, someone moved the rope from the kitchen to the computer

desk.  The rope the victim identified McLeod used to bind her hands and feet was found

inside the home, even assuming McLeod's version of the facts.

Ground Six

McLeod alleges that trial counsel was ineffective for not filing a motion in limine

and for eliciting impermissible hearsay testimony.  McLeod raised this claim in his motion

for post-conviction relief, which the state court rejected.

> Ground 6 - Ineffective assistance of counsel - failure to file a
> motion in limine and for improperly eliciting impermissible
> hearsay testimony concerning computer files on Defendant's
> computer

> In ground 6, Defendant claims ineffective assistance of counsel due to (1)
> counsel's failure to file a motion in limine to exclude Det. Wolfe's testimony
> about pornographic files on Defendant's computer, and (2) counsel eliciting
> inadmissible hearsay during Det. Wolfe's cross-examination because Det.
> Sheehan was the officer who performed the forensic analysis of Defendant's
> computer, not Det. Wolfe.  Det. Sheehan never testified at trial.

> The State in its response notes, "It is not uncommon for trial counsel to
> allow hearsay evidence when the evidence is either insignificant or is helpful
> to the defense."  That appears to be the situation in the instant case.

> On direct examination the victim testified that she was taken into the
> computer room where she was forced to perform oral sex on Defendant.
> She stated that she observed pictures on the computer screen of naked
> women, as well as a naked picture of herself.  She also stated that she did
> not have her glasses or contacts on, and that she was blind without them.
> On cross-examination, trial counsel was able to get the victim to testify that
> she was positive that she saw herself on the computer screen.

> Det. Wolfe testified that he had Defendant's computer seized as evidence,
> and when he looked at the hard drive, there were pictures of naked women
> and movies of women performing oral sex on men.  During
> cross-examination, he testified that the computer had no type of digital or
> video camera hook-up, nor did the computer have any camera capability.
> He also testified that there were no pictures of the victim naked and
> performing oral sex on the computer.

- 25 -

Although the pictures of the naked women on the computer supported the victim's testimony, the fact that she testified that she was blind without her glasses or contacts, and that Det. Wolfe testified that there were no naked pictures of her on Defendant's computer contradicted the victim's description of the crime.  Furthermore, defense counsel pointed out those contradictions to the jury in her closing arguments.

The Court finds that Defendant has failed to show that his trial counsel's representation was deficient, or that the outcome of his case would have been any different; therefore, ground 6 is denied.

Respondent's Exhibit 10 at 14-15.

McLeod fails to show the unreasonableness of the state court's application of Strickland.  Defense counsel chose to forego a hearsay objection so counsel could use the evidence to contradict the victim's testimony that she saw pornographic pictures of herself on McLeod's computer.  Counsel's chosen approach for cross-examining the state's witness is a strategic decision entitled to deference.  Dorsey v. Chapman, 262 F.3d 1181 (11th Cir. 2001), cert. denied 535 U.S. 1000 (2002).  The term "strategy" is broadly defined.  "By 'strategy,' we mean no more than this concept:  trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client."  Chandler v. United States, 218 F.3d at 1314 n.14.  See also Felker v. Thomas, 52 F.3d 907, 912 (11th Cir. 1995) ("Within that wide range of reasonable professional assistance [that is constitutionally acceptable], there is room for different strategies, no one of which is 'correct' to the exclusion of all others.") and Stanley v. Zant, 697 F.2d 955, 964 (11th Cir. 1983) (choosing a specific line of defense to the exclusion of others is a matter of strategy).

The only question is whether counsel's strategic decision was "reasonable."  Minton v. Sec'y, Dep't of Corr., 271 Fed. Appx. 916, 918 (11th Cir. 2008) ("The Supreme

Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' ") (quoting Wiggins v. Smith, 539 U.S. 510, 521 (2003).  McLeod has not shown the unreasonableness of counsel's decision to permit hearsay testimony that counsel could use to contradict the victim's testimony and challenge the reliability of the victim's testimony.

Ground Eight

McLeod alleges that the cumulative effect of trial counsel's errors amount to a denial of the effective assistance of counsel.  McLeod raised this claim in his motion for post-conviction relief, which the state court rejected.

> Ground 8 - Ineffective assistance of counsel - the cumulative
> effect of trial counsel's deficiencies
>
> In ground 8, Defendant claims ineffective assistance of counsel due to trial counsel's cumulative deficiencies.  He restates the deficiencies alleged in grounds 1 - 6.  He has also stated that but for counsel's deficiencies, the outcome of the trial would have been different.  The cumulative effect of a trial counsel's deficiencies has been held to be a cognizable ineffective assistance claim under Fla. R. Crim. P. 3.850.  State v. Gunsby, 670 So. 2d 920, 924 (Fla. 1996).
>
> The State responds that trial counsel was not ineffective on any of the grounds; however, Defendant replies that because of errors, he is entitled to at least an evidentiary hearing and possibly a new trial.  The Court finds Defendant has failed to prove the ineffective assistance claims in grounds 1, 2, 3, 4, 5, 6, and 7(a) of Defendant's Motion; therefore, ground 8 is also denied.

Respondent's Exhibit 10 at 17.

McLeod has shown that counsel committed only one error, a misstatement of fact that is the subject of ground two.  The error, however, was not prejudicial.  McLeod can prove cumulative error only by showing two or more errors.  "Without harmful errors, there

- 27 -

can be no cumulative effect compelling reversal." <u>United States v. Barshov</u>, 733 F.2d 842,

852 (11th Cir. 1984), <u>cert.</u> <u>denied</u> 469 U.S. 1158 (1985).  <u>See</u> <u>also</u> <u>Mullen v. Blackburn</u>,

808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion,

which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the

hope that, by advancing a sufficient number of claims, they could obtain relief even if

none of these had any merit. We receive enough meritless habeas claims as it is; we

decline to adopt a rule that would have the effect of soliciting more and has nothing else

to recommend it.  Twenty times zero equals zero.").  Consequently, the state court's

rejecting McLeod's cumulative error argument was not unreasonable.

<u>Ground Nine</u>

     McLeod alleges that his due process rights were violated by the prosecutor's

comments in the courtroom gallery before sentencing.  McLeod raised this claim in his

motion for post-conviction relief, a claim that the state court rejected for procedural

reasons.

>    Ground 9 - Newly discovered evidence regarding Prosecutor's
>    comments made in courtroom gallery prior to sentencing

>    In ground 9, Defendant claims there is newly discovered evidence.  On
>    March 23, 2001, the day that he was to be sentenced, Prosecutor
>    Rossomondo introduced Det. Wolfe to Mr. Muench, a former assistant state
>    attorney, as "the detective that tied the knots in the rope."  Defendant
>    provides an affidavit from Nicola J. Eakins who was sitting two seats from
>    Mr. Muench, and who overheard the conversation.

>    Newly discovered evidence is evidence that must have been
>    unknown by the trial court, by the party, or by counsel at the
>    time of the trial, and it must appear that the defendant or his
>    counsel could not have known of the evidence by the use of
>    diligence. <u>Jones v. State</u>, 591 So. 2d 911, 916 (Fla. 1991).
>    For a defendant to obtain relief based on newly discovered

> evidence, the evidence must be of such a nature that it would
> probably produce an acquittal on retrial.
>
> State v. Gunsby, 670 So. 2d 920, 924 (Fla. 1996).
>
> Defendant's allegation in ground 9 does not meet the newly discovered
> evidence test; instead the issue should have been raised on direct appeal.
> As such, this ground is denied.

Respondent's Exhibit 10 at 9.  McLeod argues that the state court erroneously applied the

state procedural rule—that "the issue should have been raised on direct appeal"—and, as

a consequence, this court is not barred from reviewing the merits of his newly discovered

evidence claim.

A procedural default occurs when a petitioner fails to properly present to the state

courts a federal constitutional claim.  A procedural default is significant because "[a] state

court's rejection of a petitioner's constitutional claim on state procedural grounds will

generally preclude any subsequent federal habeas review of that claim."  Judd v. Haley,

250 F.3d 1308, 1313 (11th Cir. 2001).  This preclusion from federal review occurs only if

the state procedural ruling rests upon an "independent and adequate" state ground.

Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  Federal courts in this circuit apply

a three-part test to determine whether a state court applied an "independent and

adequate" procedural bar.

> In Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990), we established a
> three-part test to enable us to determine when a state court's procedural
> ruling constitutes an independent and adequate state rule of decision.  First,
> the last state court rendering a judgment in the case must clearly and
> expressly state that it is relying on state procedural rules to resolve the
> federal claim without reaching the merits of that claim.  See id. at 1516.
> Secondly, the state court's decision must rest solidly on state law grounds,
> and may not be "intertwined with an interpretation of federal law."  Id.
> Finally, the state procedural rule must be adequate; i.e., it must not be
> applied in an arbitrary or unprecedented fashion.  The state court's

> procedural rule cannot be "manifestly unfair" in its treatment of the
> petitioner's federal constitutional claim to be considered adequate for the
> purposes of the procedural default doctrine. Id. at 1517.

Judd v. Haley, 250 F.3d at 1313. The court's application of the state procedural
rule—that "the issue should have been raised on direct appeal"—meets the first and
second parts of the Card test. McLeod contends that the court's application of the state
procedural rule fails to meet the third part of the test.

Federal review is precluded if a state court correctly applies a state procedural
rule. Bailey v. Nagle, 172 F.3d 1299, 1302 (11th Cir. 1999) (a procedural default occurs
when "the state court correctly applies a procedural default principle of state law to arrive
at the conclusion that the petitioner's federal claims are barred. . . ."). Conversely, federal
review is not barred if a state court incorrectly applies a state procedural rule. Brown v.
Sec'y, Dep't of Corr., 200 Fed. Appx. 885, 887 (11th Cir. 2006) ("The question here is
whether federal claims are barred by procedural default when the state court incorrectly
applies its own procedural default law. The answer is no."); Smith v. Crosby, 159 Fed.
Appx. 76, 79 (11th Cir. 2005) (a procedural default ruling fails to rest on adequate state
grounds if the state court erroneously applied state procedural rule).

McLeod argues that the state court's ruling is erroneous because he was
precluded from raising the newly discovered evidence claim on direct appeal. McLeod's
newly discovered evidence claim is based on a conversation that occurred in the
courtroom, but outside his hearing, just before sentencing. He learned about the
conversation after judgment was entered and several days after counsel filed the notice of
appeal. Respondent's Exhibit 1 at 129. McLeod argues that no state procedural
mechanism exists that would allow him to raise the issue on direct appeal because the

- 30 -

trial court lost jurisdiction to act after counsel filed the notice of appeal, see e.g., Lowe v. State, 644 So.2d 510 (Fla. 1994), and he could not raise the issue on direct appeal unless he first raised the issue in the trial court. Bertolotti v. Dugger, 514 So.2d 1095, 1096 (Fla. 1987) ("In order to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court."). Neither the state court's ruling nor the response (Doc. 25) suggest how McLeod could have raised the issue on direct appeal.[7] The state court's unexplained statement that McLeod should have raised the issue on direct appeal is an erroneous application of a state procedural default rule and fails to preclude a review of the merits of the newly discovered evidence claim. Cf. Brown v. Sec'y, Dep't of Corr., 200 Fed. Appx. at 887 ("[T]he third part of the test is not satisfied because the grounds relied upon by the state court are inadequate; they are based on an incorrect application of state procedural default law."). Accordingly, McLeod is entitled to a review of the merits of ground nine.

McLeod alleges that "his constitutional rights to due process of law" were violated based on "comments made by the prosecutor in the courtroom gallery prior to the Petitioner's sentencing." McLeod contends that his witnesses overheard the prosecutor from McLeod's trial introduce Detective Wolfe to another prosecutor as "the detective who tied the knots and loops." State law requires that newly discovered evidence "must be of such a nature that it would probably produce an acquittal on retrial." State v. Gunsby, 670 So. 2d 920, 924 (Fla. 1996). McLeod argues that his evidence meets this outcome-

---

[7] McLeod correctly argues that a motion for new trial under Rule 3.590, Fla. R. Crim. P., was not possible because that motion is limited to ten days after the verdict whereas the newly discovered evidence claim is based on an incident that occurred forty-five days after the verdict.

determinative requirement because "if a jury had heard the testimony of four (4)

witnesses, including two that did not know the Defendant, that [the prosecutor] was

brazenly flaunting the rope was tampered with by Det. Wolfe, then an acquittal of the

Defendant would have resulted."[8]  McLeod's argument is unconvincing.  Although the

prosecutor commented on the "knots and loops" during his closing argument, entirely

excluding the rope from evidentiary consideration hardly questions the likelihood of a

guilty verdict (much less "probably produce an acquittal") because the other physical and

testimonial evidence remains unquestioned.

Ground Ten

McLeod challenges his sentence because a jury was not required to determine

whether he is a habitual felony offender.  McLeod specifically relies on Apprendi v. New

Jersey, 530 U.S. 466 (2000).  McLeod's ground lacks merit because Apprendi specifically

exempts the necessity to prove a prior conviction to invoke a habitual felony offender act.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proven

beyond a reasonable doubt."  Apprendi v. New Jersey, 430 U.S. at 490.  See also James

v. United States, 550 U.S. 192, 127 S.Ct. 1586, 1600 n.8 (2007) ("To the extent that [the

defendant] contends that the simple fact of his prior conviction was required to be found

by a jury, his position is baseless. . . .  [I]n any case, we have held that prior convictions

need not be treated as an element of the offense for Sixth Amendment purposes.").

---

[8]  McLeod presents this specific argument in his Rule 3.850 motion for post-conviction relief but not in his federal petition.  Ground nine in the federal petition focuses almost exclusively on the procedural default issue.  Because McLeod is proceeding pro se, the federal petition is interpreted to include this argument from the motion for post-conviction relief.

Accordingly, McLeod's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

The clerk shall enter a judgment against McLeod and close this action.

ORDERED in Tampa, Florida, on December 22, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE